UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

OLIVER L. SANDERS III,

                Petitioner,                                CASE No. 3:22-cv-291

     v.                                      District Judge Michael J. Newman
                                                 Magistrate Judge Kimberly A. Jolson

WARDEN, SOUTHEASTERN
CORRECTIONAL INSTITUTION,

                Respondent.


## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Southeastern Correctional Institution, has filed a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This case has been referred to the Undersigned pursuant to 28 U.S.C. § 636(b) and General Order 22-05 regarding assignments and references to United States Magistrate Judges.

This matter is before the Court to consider the Petition (Doc. 1), Respondent Warden's Return of Writ (Doc. 6), Petitioner's Traverse (Doc. 13), and the state court record. (Doc. 5). For the reasons that follow, it is **RECOMMENDED** that the Petition be **DENIED** and this action be **DISMISSED WITH PREJUDICE**.

## I.  BACKGROUND

In 2019, and as part of a child sexual assault investigation, pornographic images and videos of minors were found stored on Petitioner's cellphone. The Ohio Second District Court of Appeals summarized the facts of the case as follows:

> {¶ 2} In March 2019, nine-year-old R.H. told her mother that she had been sexually abused by Sanders, a relative. The police were contacted, and an investigation

began. R.H. was interviewed by Ann Mann, a forensic interviewer at the Clark County Child Advocacy Center. R.H.'s older sister, thirteen-year-old K.H., was also interviewed. K.H. said that Sanders had sexually abused her too and showed her images of child pornography on his cellphone. Later, Sanders was interviewed by Detective Sandy Fent of the Springfield Police Department, and he gave Fent his cellphone for examination. A forensic examination of the phone revealed numerous images and videos of child pornography. In late April 2019, Sanders was indicted on nine counts of rape and one count of gross sexual imposition, as well as 38 counts of pandering sexually oriented matter involving a minor, six counts of pandering obscenity involving a minor, and seven counts of illegal use of a minor in nudity-oriented material. The case was tried to a jury.

{¶ 3} At the trial, Detective Brian Melchi testified that he had been trained to perform a forensic examination of cellphones and that he had performed a forensic extraction of all the data on Sanders's cellphone and placed the data on a USB drive, which he gave to Detective Fent. There were 487 images and videos on the cellphone. Detective Fent testified that she had examined each one and found 27 images and videos showing sexual activity involving minors, naked minors, and the genitalia of minors. Detective Fent also found numerous personal, non-pornographic pictures and videos stored on the phone that plainly identified the cellphone as Sanders's. Fent testified that the pornographic material was stored intermingled with the personal material. She also testified that the creation dates of the digital files containing the pornography (September 2017 - January 2019) overlapped with the creation dates of the files containing the personal images and videos (June 2015 - January 2019). Detective Fent testified that the pornographic material was "downloaded to [Sanders's] phone." (Tr. 200.) While the creation dates of some files predated when Sanders said he got the phone, Fent said that those files could have been transferred onto the phone.

{¶ 4} K.H. took the stand and testified that, in late 2015, Sanders tried to show her child pornography on his cellphone:

> Q. And did he show you lots of pictures? How many pictures?
>
> A. Yeah, it was like on a web browser, so it was like he searched it up and was like swiping through and showing me them.
>
> Q. So he—are you saying that he pulled it up off the Internet right there in front of you?
>
> A. No, it was already like pulled up on his phone.

(Tr. 336.)

{¶ 5} Sanders took the stand in his own defense and basically said that he did not know how the pornographic material got on his cellphone. He testified that he did

not own a phone until 2016, when he rented one for two to four months. Sanders said that he bought the phone on which the child pornography was found used from Amazon.com in February 2017. He testified that he did not transfer any pictures and did not know how the pornographic material got on the phone. Sanders said that he had had problems with images he did not recognize showing up on the phone and that he had purchased antivirus software to fix the problem.

{¶ 6} Sanders moved for a judgment of acquittal on all the counts. The trial court dismissed four counts of rape and two counts of illegal use of a minor in nudity-oriented material. The jury found Sanders not guilty of the remaining rape charges and the charge of gross sexual imposition, but it found him guilty of the remaining 49 counts based on the child pornography. The trial court declined to merge any of the offenses as allied offenses of similar import, and it sentenced Sanders to prison for 16 years: eight years total for the six charges of pandering obscenity involving a minor; eight years total for the 38 charges of pandering sexually-oriented matter involving a minor, consecutive to the sentence for pandering obscenity; and five years total for the five charges of illegal use of a minor in nudity oriented material, concurrent with the other sentences.

*State v. Sanders*, No. 2019-CA-86, 2021 WL 3012064, *1-2 (Ohio App. 2nd Dist. July 16, 2021).

To summarize, on October 24, 2019, a Clark County, Ohio, jury convicted Petitioner of a total of forty-nine counts of pandering obscenity involving a minor, pandering sexually oriented matter involving a minor, and illegal use of a minor in nudity-oriented material. On October 30, 2019, the trial court sentenced Petitioner to sixteen years in prison: eight years total for the six charges of pandering obscenity involving a minor; eight years total for the thirty-eight charges of pandering sexually-oriented matter involving a minor, consecutive to the sentence for pandering obscenity; and five years total for the five charges of illegal use of a minor in nudity-oriented material, to be served concurrently with the other sentences. (Doc. 5 at PAGEID # 63–67).

Petitioner took a timely appeal, raising five assignments of error before the Second District Court of Appeals:

First Assignment of Error:  The trial court committed error when it overruled Defense Rule 29 Motion to Dismiss Counts 13-60.

3

Second Assignment of Error:  The jury had insufficient evidence to convict Appellant.

Third Assignment of Error:  The prosecutor committed reversible error by violating Appellant's Fifth Amendment due process right to a fair trial.

Fourth Assignment of Error:  The trial court erred in finding the offenses were not allied.

Fifth Assignment of error:  The court erred when it gave consecutive sentences.

(Doc. 5 at PAGEID # 69, 72–73).  On July 16, 2021, the Court of Appeals affirmed the judgment of the trial court, overruling each of Petitioner's assignments of error.  (*Id*. at PAGEID # 122); *Sanders*, 2021 WL 3012064.

Petitioner, proceeding *pro se*, sought review by the Ohio Supreme Court, raising the following propositions of law:

First Proposition of Law:  The trial court committed error when it overruled Defense Rule 29 Motion to dismiss counts 13-60.

Second Proposition of Law:  The jury lost its way and there [sic] finding of guilty was against the manifest weight of the evidence.

Third Proposition of Law:  The prosecutor committed reversible error by violating Appellant's Fifth Amendment due process right to a fair trial.

Fourth Proposition of Law:  The trial court erred in finding the offenses were not allied.

Fifth Proposition of Law:  The court erred when it gave consecutive sentences.

(Doc. # 5, at PAGEID # 141, 145).  On November 9, 2021, the Ohio Supreme Court declined to exercise jurisdiction over the appeal.  (*Id*. at PAGEID # 165); *State v. Sanders*, 165 Ohio St. 3d 1444 (2021).

On December 6, 2021, Petitioner filed a *pro se* petition for postconviction relief, asserting the State violated his Fourth Amendment rights by searching his cellular phone without a warrant

and arguing the evidence was insufficient to support his convictions. (Doc. 5, at PAGEID # 167).

On January 21, 2022, the trial court dismissed the petition as untimely. (*Id.* at PAGEID # 172).

Additionally, on October 12, 2021, Petitioner filed a *pro se* application to reopen his direct

appeal pursuant to Ohio Appellate Rule 26(B), arguing his appellate counsel was ineffective for

failing to raise a claim of ineffective assistance of trial counsel in connection with trial counsel's

failure to move to suppress the cell phone evidence. (*Id.*, at PAGEID # 175). On February 21,

2023, the state appellate court denied the application to reopen, (Doc. 12-1, at PAGEID # 743–

49), and it does not appear that Petitioner attempted to appeal the decision to the Ohio Supreme

Court.

## II. HABEAS PROCEEDINGS

On October 7, 2022, Petitioner, proceeding *pro se*, filed the instant federal habeas petition,

raising six claims for relief:

> **Ground One: The trial court committed error when it overruled defense Rule 29 motion to dismiss counts 13-60.**
>
> Supporting Facts: Sanders does not dispute the pornographic character of any of the material or that minors were depicted. Rather, he contends that the evidence was insufficient to show that he knew about the material or that he was responsible for its being on his cellphone. Sanders presented as evidence the bill of purchase for the phone during trial, showing the images were downloaded to the phone two years prior to Sanders purchasing the phone. Prosecution continued to speculate as to how the files got on the phone, but admitted to having no concrete evidence Sanders was responsible.
>
> **Ground Two: Jury lost its way and their finding of guilty was against the manifest weight of the evidence.**
>
> Supporting Facts: During trial. Prosecutor ignored defense counsel's objection while showing images and videos pulled from Sanders' phone, using the files to emotionally compromise the jury, while completely disregarding the evidence that placed those same images and videos on the phone two years before Sanders had bought the device. This created an emotionally charged bias in the jury, causing them to lose their way. This act of the Prosecutor had also resulted in jury manipulation, whereas two or three files would have sufficed to show the content

was there, but when the prosecution used close to, if not more than, one dozen (12) of those file[s], this became jury manipulation.

**Ground Three: Prosecutor committed reversible error by violating the petitioner's Fifth-Amendment right to a fair trial.**

Supporting Facts: Prosecutor vehemently ignored defense counsel's objections during cross-examination, thus violating Sanders' right to fair trial.

During trial, arresting Detective Sandra Fent had taken the stand under cross examination and admitted that neither her department nor the prosecutions department knew if Sanders was responsible for any crime or not, once again violating Sanders' right to a fair trial. By admitting this, Det. Fent reasoned that even though she nor the prosecutor could declare beyond a reasonable doubt that Sanders was guilty, they expected [the] jury to do just that.

**Ground Four: Trial court erred in finding the offenses were not allied.**

Supporting Facts: Sanders contends on appeal that all 49 offenses were allied offenses of similar import and should have been merged for sentencing, because they were all, at root, based on the same conduct – possessing obscene material showing a minor.

**Ground 5: The trial court erred when it gave consecutive sentences.**

Supporting Facts: Sanders argues that the record does not support the trial court's consecutive-sentence findings. Sanders was given two eight (8) year sentences, consecutive to one another. Given this was [] Sanders' first criminal offense, the sentences should not have been consecutive. R.C. 2953.08(G)(2)(a) compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings.

**Ground 6: Court had insufficient evidence to convict petitioner.**

Supporting Facts: During trial, prosecution had only the printout of the extraction report presented by the Springfield Police Department to use as evidence. The extraction report had all images and videos petitioner was accused of, but no evidence showing that petitioner was guilty of procuring the files, or even that petitioner was aware of their existence. Defense presented evidence showing that the files pre-existed the petitioners purchase of the phone by two years. Prosecution could only speculate during trial as to how the files were added to the phone, but admitted to not having any physical evidence to prove their theories.

(Doc. 1).

In December 2022, Respondent Warden filed the state court record and a Return of Writ. (Docs. 5–6). Respondent argues that all of Petitioner's claims are procedurally defaulted, are non-cognizable, or lack merit. On May 12, 2023, Petitioner filed the Traverse. (Doc. 13). For the following reasons, the Court finds Petitioner is not entitled to relief on his claims, and the Undersigned **RECOMMENDS** this action be **DISMISSED WITH PREJUDICE**.

## III. LEGAL STANDARDS

### A. AEDPA

Because this is a habeas corpus case, provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") apply to this case. *See generally* 28 U.S.C. § 2254; *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 19-20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the circumstances under which a federal court may grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in a state court proceeding. Specifically, under AEDPA, a federal court shall not grant a writ unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while Section 2254(d)(2) places restrictions on a federal court's review of claimed factual errors. This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015). Additionally, this Court's habeas review is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

### B. Procedural Default

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). Where a petitioner has failed to exhaust claims, but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular claim to the highest court of the state, so that the state has a fair chance to correct any errors made in the course of the trial or the appeal. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas

petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted.  That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court.  As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – that is, they are "procedurally defaulted."  It is well settled that "[a] common example of a procedural default is a failure to raise a claim in state court in a timely manner."  *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).  Under Ohio law, failure to make timely objections at trial or to raise issues on direct appeal, if possible, bars a petitioner from raising that claim in a federal habeas corpus petition.  *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000) (citing *State v. Perry*, 10 Ohio St. 2d 175 (1967)).

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (citing the four-part *Maupin* standard).  First, the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with the rule.  Second, the court must determine whether the state courts actually enforced the state procedural sanction.  Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.  Finally, if the court determines that a state procedural rule was not complied with and the rule is an adequate and independent state ground, then the petitioner may not obtain review of his or her claims on the merits unless the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or

she was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138.  In order

to establish cause, a petitioner must show that "some objective factor external to the defense"

impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477

U.S. 478, 488 (1986).  The petitioner bears the burden of showing cause and prejudice. *Hinkle v.

Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir.

1999)).

## IV.  DISCUSSION

### A.  Claims One and Six – Sufficiency of the Evidence

In his first and sixth grounds for relief, Petitioner argues the trial court erred when it

overruled his Rule 29 motion for acquittal as to all counts and that his convictions are not supported

by sufficient evidence.  The state appellate court rejected these claims on the merits:

{¶ 8} The first assignment of error alleges:

THE TRIAL COURT COMMITTED ERROR WHEN IT OVERRULED DEFENSE RULE 29 MOTION TO DISMISS COUNTS 13-60.

{¶ 9} Sanders does not dispute the pornographic character of any of the material or that minors were depicted. Rather, he contends that the evidence was insufficient to show that he knew about the material or that he was responsible for its being on his cellphone.

{¶ 10} "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 11} The 49 offenses of which Sanders was found guilty comprised violations of three different statutes. Six offenses were pandering obscenity involving a minor under R.C. 2907.321, three of which were charged under R.C. 2907.321(A)(1) and three under (A)(5):

(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

(1) Create, reproduce, or publish any obscene material that has a minor or impaired person as one of its participants or portrayed observers.

* * *

(5) Buy, procure, possess, or control any obscene material, that has a minor or impaired person as one of its participants.

Thirty-eight offenses were pandering sexually oriented matter involving a minor under R.C. 2907.322; of those, 19 counts were violations of division (A)(1) and 19 were violations of division (A)(5):

(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

(1) Create, record, photograph, film, develop, reproduce, or publish any material that shows a minor or impaired person participating or engaging in sexual activity, masturbation, or bestiality.

* * *

(5) Knowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor or impaired person participating or engaging in sexual activity, masturbation, or bestiality.

Finally, five offenses were illegal use of a minor in nudity-oriented material under R.C. 2907.323(A)(3):

(A) No person shall do any of the following:

* * *

(3) Possess or view any material or performance that shows a minor * * * who is not the person's child or ward in a state of nudity[.]

{¶ 12} Sanders was found guilty under division (A)(1) of R.C. 2907.321 and 2907.322 for "reproduc[ing]" pornographic material and under division (A)(5) of that statute for "possess[ing]" the material. "The state can prove that an offender reproduced such material by presenting evidence that the offender downloaded images from the Internet onto a hard drive." *State v. Kraft*, 1st Dist. Hamilton No. C-060238, 2007-Ohio-2247, ¶ 92, citing *State v. Huffman*, 165 Ohio App.3d 518.

2006-Ohio-1106, 847 N.E.2d 58 (1st Dist.) (evidence proving sexually orientated matter was downloaded from the internet and stored is sufficient evidence for a trier of fact to conclude the images were reproduced for purposes of R.C. 2907.322(A)). *Accord State v. Sullivan*, 2d Dist. Montgomery No. 23948, 2011-Ohio-2976, ¶ 34 (agreeing with *Huffman*). As for possession, "[p]ossession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession." R.C. 2901.21(F)(1). We note too that "[t]he state may rely solely on circumstantial evidence in proving that the defendant had knowledge of the character of the material." *Kraft* at ¶ 87 (referring to R.C. 2907.322), citing *State v. Burgin*, 56 Ohio St.2d 354, 364, 384 N.E.2d 255 (1978).

{¶ 13} Sanders was found guilty of the 49 offenses for "reproduc[ing]" and of "possess[ing]" 27 different images and videos of child pornography. The pornographic material was found on his cellphone intermingled with personal photographs and videos. The evidence showed that the pornographic material was downloaded to the phone after Sanders got the phone. According to the testimony, the pornographic material also could have been transferred onto the phone. Finally, there was testimony showing that, in the past, Sanders had stored pornographic images of children on his cellphone.

{¶ 14} Viewing this evidence in a light most favorable to the prosecution, we conclude that the jury could have reasonably inferred that Sanders, knowing its character, viewed and downloaded the pornographic material and stored it on his cellphone. Therefore, the trial court did not err by overruling his motion for acquittal of the 49 offenses.

{¶ 15} The first assignment of error is overruled.

*State v. Sanders*, No. 2019-CA-86, 2021 WL 3012064, *2-3 (Ohio App. 2nd Dist. July 16, 2021).

To the extent Petitioner's first claim for relief argues the trial court erred in denying his Motion for Acquittal under Ohio Criminal Rule 29, his claim is not cognizable on habeas review. That is because this Court has habeas jurisdiction only over claims that challenge the legality of a petitioner's custody based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). "The decision whether to grant a motion for acquittal pursuant to Ohio Crim. R. 29 is a matter of state law and is cognizable in habeas only if the denial of such a motion is a violation of due process." *Smith v. Bobby*, No. 5:04-cv-2353, 2005 WL 2076667, at *24 (N.D. Ohio Aug. 25, 2005), *report and recommendation adopted*, No. 5:04-cv-2353, 2007

WL 2427999 (N.D. Ohio Aug. 21, 2007); *see also Small v. Warden*, No. 2:12-cv-0958, 2012 WL 3745834, *4 (S.D. Ohio July 15, 2013) ("Petitioner's claim, as it relates to the trial court's denial of his motion for judgment of acquittal pursuant to Ohio Crim. R. 29 presents an issue of state law that cannot be reviewed in federal habeas corpus."), *report and recommendation adopted*, No. 2:12-cv-0958, 2013 WL 9894270 (S.D. Ohio Aug. 19, 2013). Thus, to the extent Petitioner argues the trial court abused its discretion under Ohio law by denying the motion for acquittal as to all counts, this claim does not present a question of federal law and is not cognizable on habeas review.

Petitioner's underlying claim – that his Due Process rights were violated because there was insufficient evidence to convict him as set forth in his sixth claim for relief – is also unavailing. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). It is well-settled that the standard for evaluating the merits of constitutional claims challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the Supreme Court held that "the relevant question" in a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319 (emphasis in original). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

When determining if the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright*

*v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson*, 443 U.S. at 326). Instead, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* at 296-97 (quoting *Jackson*, 443 U.S. at 326). Moreover, federal habeas courts must afford a double layer of deference to state court determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh*, deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 567 F.3d 191, 205 (6th Cir. 2009). Second, even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). In either instance, this is a substantial hurdle – one that Petitioner cannot surmount.

With these standards in mind, this Court simply cannot say that the state appellate court's rejection of Petitioner's sufficiency of the evidence claim was contrary to or an unreasonable application of *Jackson*. This Court must give deference to the state appellate court's interpretation of state law with respect to the offenses of pandering sexually oriented matter involving a minor, pandering obscenity involving a minor, and illegal use of a minor in nudity-oriented material. Here, the appellate court set forth the applicable sections of the Ohio Revised Code and determined the evidence was sufficient to support Petitioner's convictions for multiple acts regarding the

reproducing, downloading, and possession of prohibited material involving minors. The record supports this determination and contains sufficient circumstantial evidence from which the jury could infer the material in question was known to Petitioner, including evidence that the material was created/downloaded and stored in a manner that overlapped and was intermingled with Petitioner's personal photos, selfies, and other personal information, such as photos of his resume and photo ID. It is well settled that "[s]tates can prove guilt beyond a reasonable doubt using exclusively circumstantial evidence." *James v. Corrigan*, No. 22-1507, 2023 WL 7031567, *3 (6th Cir. Oct. 26, 2023). Here, contrary to Petitioner's assertions, the evidence suggested that the creation/download dates for both the child pornography and the personal material on the phone both preceded and succeeded Petitioner's purchase of his phone, suggesting that some images were transferred onto the device and some items were obtained after his purchase of the phone. (Doc. 5-1, at PAGEID # 229–241; Doc. 5-2, at PAGEID # 281–92). The creation dates of the prohibited materials ranged from September 2017 through January 2019, and the creation dates of Petitioner's personal material ranged from June 2015 through January 2019. (Doc. 5-1, PAGEID # 229–235). Direct testimony was also presented that Petitioner showed some of the images to K.H., a thirteen-year-old relative, by swiping through stored data and not by accessing the images from the internet. (Doc. 5-2, at PAGEID # 415–430).

Petitioner contends the evidence was insufficient to show that he personally was responsible for the images on his phone, which he purchased in used condition, as opposed to a prior owner of the phone. But it is not the role of this Court to reweigh the evidence or judge the credibility of witnesses who testified at trial. It is the function of the jury as the trier of fact to resolve conflicts in testimony, weigh the evidence and draw reasonable inferences from that evidence. "Juries choose which witnesses and statements to believe, and a court can't substitute

its judgments for a jury's." *James*, 2023 WL 7031567, *4 ("James can't repackage his credibility challenges as sufficiency arguments."). Simply put, the jury in this case was free to disbelieve Petitioner, and it did precisely that. And this Court is bound to defer to the jury's resolution of those issues and the state appellate court's decision that the evidence was sufficient to support the conviction. *Jackson*, 443 U.S. at 319. Moreover, Petitioner's argument that the State should have consulted BCI to analyze the phone is not meritorious. The fact that the State could have done more does not mean the State did not do enough. Viewing the evidence in a light most favorable to the prosecution, the record contained sufficient evidence that Petitioner was aware the material was on his device, and the Court finds habeas relief is not warranted on Petitioner's sufficiency of the evidence claim.

For the foregoing reasons, the Undersigned **RECOMMENDS** that Petitioner's first and sixth claims for relief be **DENIED**.

### B. Claim Two – Manifest Weight of the Evidence

In his second claim for relief, Petitioner asserts his convictions are against the manifest weight of the evidence. This claim does not provide a basis for federal habeas relief. Under Ohio law, a claim that a verdict was against the manifest weight of the evidence—as opposed to one based upon insufficient evidence—requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida,* 457 U.S. 31 (1982). Because a federal habeas court does not function as an additional state appellate court vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions are against the manifest weight of the evidence

16

cannot be considered by this Court.  *See, e.g., Stokes v. Warden*, No. 2:22-cv-3921, 2023 WL 6961414, \*11 (S.D. Ohio Oct. 20, 2023) (Silvain, M.J.) ("Manifest weight of the evidence is a matter of pure state law, and thus, is not a cognizable claim in habeas.")*; see also Ross v. Pineda*, No. 3:10-cv-391, 2011 WL 1337102, at \*3 (S.D. Ohio Apr. 7, 2011), *aff'd*, 549 F. App'x 444 (6th Cir. 2013) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law.").  Accordingly, the Undersigned **RECOMMENDS** that Petitioner's second claim for relief be **DENIED**.

### C.  Claim Three – Prosecutorial Misconduct

In his third claim for relief, Petitioner argues the prosecutor committed misconduct in connection with the testimony of Detective Sandra Fent.  On direct appeal, Petitioner raised a claim of prosecutorial misconduct but limited his argument to two allegations:  that the prosecutor committed misconduct in connection with the testimony of Ann Mann, the juvenile forensic interviewer, and during closing arguments by misleading the jury regarding the burden of proof.

Respondent alleges in the Return of Writ that Petitioner has procedurally defaulted his claim of prosecutorial misconduct concerning the testimony of Detective Fent by not presenting this allegation to the state appellate court as part of his assignment of error alleging prosecutorial misconduct on direct appeal.  (Doc. 6, at PAGEID # 706).  Petitioner agrees, and in the Traverse, "concedes to the procedural default" of his third ground for relief, wherein he sets forth a single claim of prosecutorial misconduct challenging the Detective Fent testimony.  (Doc. 13, at PAGEID # 759).  Because Petitioner concedes his third claim for relief is defaulted, and because he does not argue that cause exists to excuse this procedural default, the Undersigned **RECOMMENDS** Petitioner's third claim for relief be **DENIED**.

### D. Claim Four – Allied Offenses Claim

In his fourth claim for relief, Petitioner argues the trial court failed to merge allied offenses of similar import for sentencing. Petitioner asserts that "all 49 offenses" should have merged for sentencing, because "they were all, at root, based on the same conduct – possessing obscene material showing a minor." (Doc. 1, at PAGEID # 10).

In the Return of Writ, Respondent asserts Petitioner's fourth claim for relief is procedurally defaulted. Respondent notes that before the trial court at sentencing, Petitioner argued that only a handful of offenses – specifically the "reproducing offenses" – should have merged. But on direct appeal, Petitioner argued the trial court erred by failing to merge all forty-nine counts at sentencing as allied offenses of similar import. Respondent is correct. On direct appeal, the appellate court determined Petitioner's claim was subject to plain error review, because Petitioner did not present the full scope of his claim to the trial court for consideration at sentencing:

{¶ 29} The fourth assignment of error alleges:

> THE TRIAL COURT ERRED IN FINDING THE OFFENSES WERE NOT ALLIED.

{¶ 30} The U.S. and Ohio Constitutions prohibit multiple punishments for the same offense. *See State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23. R.C. 2941.25 codifies these constitutional protections by prohibiting a court from imposing separate sentences for what are called "allied offenses of similar import." The Ohio Supreme Court has said that offenses are not allied and that separate sentences may be imposed if the answer to any of the following questions is yes: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?" *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. "A defendant who argues on appeal that the trial court erred by not merging multiple offenses bears the burden to show that the offenses are allied pursuant to R.C. 2941.25." (Citation omitted.) *State v. Sullivan*, 2d Dist. Montgomery No. 23948, 2012-Ohio-4317, ¶ 13.

{¶ 31} Sanders contends on appeal that all 49 offenses were allied offenses of similar import and should have been merged for sentencing, because they were all, at root, based on the same conduct—possessing obscene material showing a minor.

{¶ 32} But this was not what Sanders argued in the trial court. There, Sanders's merger argument was much more limited. According to the transcript of the sentencing hearing, Sanders submitted a sentencing memorandum that raised the issue of merger. The memorandum is not in the record, nor is it listed on the docket sheet. When given the opportunity to address the merger issue, defense counsel seemed to concede that most of the offenses did not merge and argued only that the "reproducing" offenses based on a series of images that were downloaded in quick succession should merge:

> * * * Your Honor, I've read the case law. I thank the prosecutor for him in State v. Campbell [sic], but I've read other case law in anticipation of this; and it's clear that when it comes to this specific offense, the courts have determined that each and every [count] of all this is considered a separate offense, and I understand that.
>
> However, the only thing I'd point out is that, and I don't have the— in front of me but there were, I think, four or five pictures downloaded, I think, at the exact same time, and I don't know which ones they are but I would—I guess my position would be, those appear to be exact minutes, so I think my argument would be that those should be merged for purposes of sentencing, as they appear to be all happening at once as best I can tell from what I was given in discovery, Your Honor. Thank you.

(Sentencing Tr. 4). The State responded by citing *State v. Campbell*, 12th Dist. Butler No. CA2014-06-137, 2015-Ohio-1409, which states that "[a]lthough the defendant may have obtained images around the same time, each file obtained constitutes a new and distinct crime because the 'mere fact that the crimes occurred in quick succession does not mean that they were not committed separately or with separate animus.'" *Id.* at ¶ 20, quoting *State v. Eal*, 10th Dist. Franklin No. 11AP-460, 2012-Ohio-1373, ¶ 93. The trial court agreed with the State and, citing *Campbell*, ruled against merging the offenses.

{¶ 33} The trial court's ruling is undoubtedly correct.

{¶ 34} But that ruling is very narrow compared to Sanders's argument here that all the offenses should merge. "A first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below." *State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 10, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). Sanders never objected to separate sentences for any other offenses. Because he failed to bring the claim of error to the trial court's attention, he forfeited it. So to this forfeited claim, Crim.R. 52(B)'s plain-error standard applies. Sanders cannot prevail on his merger claim unless he shows that "(1) there was an error, (2) the error was 'plain,' i.e., obvious, and (3) the error affected substantial rights." *State*

*v. Tench*, 156 Ohio St.3d 955, 2018-Ohio-5205, 123 N.E.3d 955, ¶ 217, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶ 35} Sanders was found guilty of 49 offenses based on 27 different images or videos. The law is clear that child pornography offenses are offenses of dissimilar import if each offense involves a separate file or image. *See State v. Stapleton*, 4th Dist. Pickaway No. 19CA7, 2020-Ohio-4479, ¶ 54 ("Ohio courts have found that child pornography offenses are offenses of dissimilar import when each offense involves a separate file or image."); *State v. Mannarino*, 8th Dist. Cuyahoga No. 98727, 2013-Ohio-1795, ¶ 53, quoting *Eal* at ¶ 93 ("Each child pornography file or image that is downloaded is 'a new and distinct crime.'"); *State v. Blanchard*, 8th Dist. Cuyahoga No. 90935, 2009-Ohio-1357, ¶ 12, *rev'd on other grounds in In re Cases Held for Decision in State v. Williams*, 130 Ohio St.3d 254, 2011-Ohio-5348, 957 N.E.2d 289 (holding that the trial court was not required to merge various charges of pandering based on numerous photographs, because each photo involved "a separate physical act to take the photograph, and resulted in a separate photographic image"). Thus, 27 of Sanders's offenses definitely did not merge as allied offenses.

{¶ 36} The images and videos here formed three groups. Five images showed nude minors, and these were the basis of the five illegal-use offenses under R.C. 2907.323(A)(3). Nineteen images and videos showed a minor engaging in sexual activity, and these were the basis of the 19 reproducing sexually oriented material offenses under R.C. 2907.322(A)(1), as well as the 19 possessing offenses under R.C. 2907.322(A)(5). Lastly, three images focused on the genitalia of minors, and these were the basis for the three reproducing obscene material offenses under R.C. 2907.321(A)(1) and for the three possessing offenses under 2907.321(A)(5). Those offenses that did not merge, then, were: the five illegal-use offenses, *either* the 19 reproducing sexually-oriented material offenses *or* the 19 possessing sexually-oriented material offenses, and *either* the three reproducing obscene-material offenses *or* the three possessing obscene-material offenses. So the merger issue in this case boils down to whether the reproducing and possessing offenses charged under each statute were allied offenses.

{¶ 37} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 26. It is the evidence that "reveal[s] whether the offenses have similar import." *Id* "A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed?" *Id.* at ¶ 25. Accordingly, we turn to what the evidence showed about how Sanders committed the reproducing and possessing offenses.

{¶ 38} Sanders was found to have downloaded the pornographic material over the internet onto his cellphone (reproducing) and to have viewed it or stored it there

(possessing). We think that this represents separate conduct. A person who views images or videos on a webpage "possesses" that material, at least temporarily. If the person then downloads the material, saving it to his device, he has reproduced it. As we said earlier, creating a copy of a pornographic image by downloading it over the internet constitutes reproduction. *See State v. Hodge*, 2d Dist. Miami No. 2013-CA-27, 2014-Ohio-1860, ¶ 10. Not only does the conduct in these two scenarios differ, but also the potential harm that could result. Simply viewing the pornographic material on a website is arguably less harmful than the harm that could result from downloading the material, because saving a copy of material allows one to easy distribute it or show it to another person.

{¶ 39} Sanders did not carry his burden to prove that the offenses were allied. Given the evidence in this case, the reproducing and possessing offenses under R.C. 2907.322 and R.C. 2907.321 were supported by different conduct. The trial court did not plainly err by imposing separate sentences for each offense.

{¶ 40} The fourth assignment of error is overruled.

*State v. Sanders*, No. 2019-CA-86, 2021 WL 3012064, *1-3 (Ohio App. 2nd Dist. July 16, 2021).

Ohio's contemporaneous objection rule has been explained many times. It "requires the parties to preserve errors for appeal by calling them to the attention of the trial court at a time when the error could be avoided or corrected." *Twyford v. Bradshaw*, No. 2:03-cv-906, 2017 WL 4280955, at *19 (S.D. Ohio Sept. 27, 2017). It has been held time and again that the enforcement of this rule is an adequate and independent state ground of decision sufficient to bar federal habeas relief. *See, e.g., Hand v. Houk*, 871 F.3d 390, 417 (6th Cir. 2017) (citing *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) ("Failure to adhere to the firmly-established Ohio contemporaneous objection rule is an independent and adequate state ground of decision.")); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011) ("Ohio's contemporaneous objection rule is a firmly established procedural rule that is an adequate and independent state ground to foreclose federal relief."); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010) (same).

Here, Petitioner has waived his claim that he was improperly sentenced on allied offenses of similar import, because he failed to make a contemporaneous objection to the lack of merger –

21

and failed to request merger as to all (or even specific) counts – at sentencing. The court of appeals noted that Petitioner submitted a sentencing memorandum raising the issue of merger, but that memorandum was not made part of the record on appeal, and it was also not listed on the court's docket sheet. *Sanders*, 2021 WL 3012064 at *6. What is apparent, however, is that before the trial court, counsel mostly abandoned the issue of merger and seemingly conceded that the offenses did not merge. Trial counsel recognized that "the courts have determined that each and every [count] of all this is considered a separate offense, and I understand that." *Id*. Counsel then vaguely suggested that certain "reproducing" offenses should merge, although he did not identify the counts or the pertinent content underlying the counts with sufficient particularity to provide notice of what, exactly, he was requesting. The court of appeals quoted the following statement by counsel: "the only thing I'd point out is that, and I don't have the – in front of me but there were, I think, four or five pictures downloaded, I think, at the exact same time, and I don't know which ones they are but I would – I guess my position would be, those appear to be exact minutes, so I think my argument would be that those should be merged for purposes of sentencing, as they appear to be all happening at once as best I can tell from what I was given in discovery." *Id*. Counsel did not argue that all forty-nine offenses should merge as allied offenses of similar import, as Petitioner attempted to argue on direct appeal and as he argues here, nor did counsel identify any specific counts that should have merged. Based on the existing state court record, it is difficult if not impossible to ascertain the specific counts trial counsel sought to have merged at sentencing and which counts counsel recognized as separate and distinct for sentencing purposes. This Court cannot say that the factual or legal basis of the merger request is apparent from the record or was made apparent at sentencing.

In this case, the Ohio Court of Appeals enforced the waiver by finding Petitioner failed to object to the separate sentences and failed to request merger on the basis of allied offenses at trial. The state appellate court's plain error review does not save Petitioner from this procedural default. This is because "[a] plain error analysis is not tantamount to a review on the merits," meaning the state appellate court's review for plain error does not imply it overlooked the procedural default. *Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000); *see also Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (holding that plain error analysis is "viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits"). Said differently, an appellate court's alternative ruling on the merits does not remove the procedural default. *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1076 (6th Cir. 2015); *Adams v. Wainwright*, No. 20-3646, 2022 WL 808036, *4–5 (6th Cir. Mar. 17, 2022) (citing *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003)).

In sum, Petitioner's fourth claim for relief is procedurally defaulted to the extent he failed to request merger of allied offenses of similar import at trial and sentencing. The Undersigned **RECOMMENDS** this claim be **DENIED** as defaulted.

### E. Consecutive Sentencing Claim

Finally, in his fifth claim for relief, Petitioner argues the trial court erred in imposing consecutive sentences. According to Petitioner, "the record does not support the trial court's consecutive-sentence findings. Sanders was given two eight (8) year sentences, consecutive to one another. Given this was [] Sanders' first criminal offense, the sentences should not have been consecutive." (Doc. 1, at PAGEID # 12). Respondent argues Petitioner's claim is non-cognizable in federal habeas corpus, because Petitioner has raised a state law claim that "merely challeng[es] Ohio's imposition of its own sentencing laws." (Doc. 6, at PAGEID # 714).

Upon review, the Undersigned finds that Petitioner's fifth claim for relief challenges his sentence only as it relates to Ohio law.  Under Ohio law, specifically R.C. § 2929.14(C)(4), if prison terms are to be imposed for multiple offenses, a trial court "may require the offender to serve the prison terms consecutively" if the judge makes certain findings.  The state appellate court affirmed Petitioner's sentence and determined the trial court made the findings required by R.C. 2929.14(C)(4) to support consecutive sentences, including a finding that consecutive sentences were necessary to protect the public from future crimes and to punish Petitioner.  The appellate court also reiterated that "Ohio courts have regularly found consecutive sentences to be appropriate where a defendant is in possession of multiple pornographic images." *Sanders*, 2021 WL 3012064, *8 (citing cases).

To the extent Petitioner alleges the trial court erred in interpreting and applying Ohio law in imposing consecutive sentences, Petitioner has raised an issue of state law that is not cognizable in this federal habeas proceeding.  *See, e.g.*, *Crawford v. Foley*, No. 1:22-cv-1096, 2023 WL 6131059, at *10-11 (N.D. Ohio Aug. 31, 2023), *report and recommendation adopted*, 2023 WL 6129950 (N.D. Ohio Sept. 19, 2023) (finding state consecutive sentences claim not cognizable on federal habeas review "because it asserts a violation of state sentencing laws, which is a state-law issue").  *See also Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) (an alleged violation of state sentencing laws is not cognizable on federal habeas review) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Blair v. Cook*, No. 1:16-cv-940, 2017 WL 6316695, at *5 (S.D. Ohio Dec. 11, 2017) ("Because the question of whether the trial court complied with Ohio Revised Code

§ 2929.14(C)(4) in imposing consecutive sentences is purely one of state law, it is not cognizable in federal habeas corpus.")

This Court has habeas jurisdiction to review Petitioner's claim only to the extent Petitioner challenges his confinement based on an alleged violation of the Constitution, laws, or treaties of the United States. The United States Supreme Court has held that the imposition of consecutive sentences for different offenses generally does not violate the United States Constitution. *See Oregon v. Ice*, 555 U.S. 160 (2009). Indeed, the Supreme Court emphasized that the choice whether to impose sentences consecutively or concurrently is a matter that has historically rested "exclusively" with the sentencing judge. *Id.* at 168–69. Courts addressing this issue have consistently held that a claim alleging a constitutional violation due to the imposition of consecutive sentences is not cognizable unless the petitioner demonstrates that the sentence exceeds the statutory range authorized by State law. *See, e.g., Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000) ("As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining the type and extent of punishment for convicted defendants.") (internal quotation marks and citation omitted). *See also Rognon v. Turner*, No. 3:20-cv-2519, 2023 WL 4710873, at *8 (N.D. Ohio Mar. 13, 2023), *report and recommendation adopted sub nom.,* 2023 WL 4706764 (N.D. Ohio July 24, 2023) (same). At no point in these proceedings has Petitioner alleged or established that the trial court exceeded the maximum sentence authorized under Ohio law when it imposed consecutive sentences. This Court's own review of the sentencing record does not reflect any error of constitutional dimension.

The Undersigned **RECOMMENDS** that Petitioner's fifth claim for relief be **DENIED**.

## V. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that all of Petitioner's claims be **DENIED** and the Petition be **DISMISSED with prejudice**.

Because no reasonable jurist would disagree with the recommendations contained herein, Petitioner should not be granted a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020). Further, this Court should certify to the Sixth Circuit that any appeal would be objectively frivolous, and therefore, Petitioner should not be permitted to proceed *in forma pauperis* on appeal.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised

that if they intend to file an appeal of any adverse decision, they may submit arguments in any

objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.

s/Kimberly A. Jolson
KIMBERLY A. JOLSON
November 16, 2023                    UNITED STATES MAGISTRATE JUDGE
